**Joseph E. BONNER, Petitioner,**

**v.**

**Jack BROCK, District Judge of Comanche County, Oklahoma, Respondent.**

**No. P–79–479.**

Court of Criminal Appeals of Oklahoma.

April 29, 1980.

---

Jan E. Cartwright, Atty. Gen., Richard W. Tannery, Dist. Atty., Lawton, Comanche County, for respondent.

Sam H. Johnson, Lawton, for petitioner.

### ORDER GRANTING PETITION FOR WRIT OF PROHIBITION

PER CURIAM:

Petitioner has filed a petition for an alternative Writ of Prohibition and/or Mandamus to prohibit the District Court of Comanche County, Oklahoma, from further proceeding against him in the execution of a judgment rendered against him. The petitioner was convicted on October 12, 1973, for burglary in the second degree and sentenced to three (3) years' imprisonment. The record shows that the petitioner filed a notice of intent to appeal and motion for a new trial on October 19, 1973, and that an appeal bond was posted. On April 11, 1974, designation of record was filed and on April 12, 1974, the Court of Criminal Appeals certified receipt of the petition in error. This Court dismissed the appeal on September 16, 1974, because the record had not been included with the petition in error, as required by 22 O.S.Supp.1979, § 22, ch. 18, App., § II, Rule 2.6. It should be noted that petitioner's attorney also notified this Court of his intention to abandon the appeal.

Despite this Court's dismissal and the issuance of the mandate, five (5) years elapsed before a bench warrant was issued for the arrest of the petitioner to serve said sentence. The record indicates that this delay was through no fault of the petitioner. After his conviction, the petitioner testified as a State's witness in a murder complaint. An agreement was made with the then District Attorney that in exchange for petitioner's testimony, the District Attorney would confess to the motion for a new trial and not prosecute the retrial of the Burglary Second Degree charge. The petitioner abided by the bargain and testified. The

Court file does not contain a written order sustaining the motion for new trial, but the findings of fact and the conclusions of law of an evidentiary hearing held on November 1, 1979, show that motion for new trial had been confessed subsequent to an appeal in the Court of Criminal Appeals.

It is apparent that from the time petitioner testified until the date when a bench warrant was issued for his arrest in May, 1979, he believed his sentence for burglary in the second degree had been concluded. During that five year interim, a new District Attorney took office. He now seeks to enforce the sentence, arguing the agreement between his predecessor and the petitioner to be a legal nullity.

Both parties confine discussions in their briefs to the question of whether this Court retained jurisdiction over the motion for new trial, thereby rendering ineffective the eventual dismissal of petitioner's appeal. He argues that the trial court had never been divested of jurisdiction because the case record had not been submitted to the Court of Criminal Appeals and that a ruling upon a motion for new trial by the trial court is a jurisdictional prerequisite to the perfecting of an appeal. Counsel further provides as reason for filing an appeal an over-abundance of caution motivated by the desire to protect the petitioner's appeal rights.

The State's arguments are technically sound. The State contends that jurisdiction did transfer to the higher court and that the petitioner's failure to transmit the records to this Court after receipt from the District Court Clerk of notice of completion of record on appeal indicated abandonment of appeal rather than evidence that the trial court had never been divested of jurisdiction. The State also points to the fact that petitioner had at no time raised the issue of jurisdiction until June, 1974, and that by his own motion for extension of time on April 12, 1974, treated this Court as having jurisdiction. The State's position is that the Court of Criminal Appeals properly assumed jurisdiction and was awaiting the trial transcript as it has authority to do

under Section II, Rule 2.6, ¶ C, of the Rules of the Court of Criminal Appeals. That rule provides that the Court for good cause shown on the affidavit of appellate attorney of record may assume jurisdiction and grant additional time for filing original transcript and copy. The State, therefore, asserts that the trial court lacked authority to sustain the State's motion to confess motion for new trial. In support of this assertion, the State cites *Ex parte Peck*, 96 Okl.Cr. 71, 248 P.2d 655 (1952), which states the general rule that after a case is appealed to the Court of Criminal Appeals the trial court is divested of all jurisdiction except to comply with the mandate of this Court.

However accurate the State's assessment of the jurisdictional issue may be, this case more properly turns on the issue of whether petitioner's rights to fundamental due process were denied. Assuming that this Court properly invoked appellate jurisdiction and that its issuance of the mandate should have been enforced, the central issue remains whether the judgment and sentence was executed within a reasonable time.

After this Court handed down the dismissal, five years passed without the State's showing any interest in carrying out the sentence of three years, which obviously could have been served well before now. Having fulfilled his side of the bargain with the former District Attorney coupled with the passage of time without prosecution or a new trial as per the bargain, the petitioner was justified in believing that the matter had been laid to rest. To find that the three year prison sentence should be administered at this late date offends notions of fundamental fairness and due process. In a case similar to this one, a Federal District Court granted the petitioner's writ for habeas corpus. In that case, *Lanier v. Williams*, 361 F.Supp. 944 (E.D.N.C.1973), the petitioner, through acts and omissions of state officials and through no fault of his own, was led to believe that he was free of a prison sentence. The state had made no attempt for five years, after it had erroneously released the petitioner, to reacquire

custody over him. The Federal Court relied on Constitutional Due Process to reach its decision. In addressing the net effect of the state action the court voiced the proposition that a person "duly convicted of a criminal offense and upon whom a sentence of imprisonment is imposed, has a right to serve that sentence promptly and continuously." *Lanier v. Williams*, supra, at 947.

In *Lanier*, the petitioner had been mistakenly released from jail in September, 1967. The solicitor, an agent for the state, was present and acquiesced. The petitioner thereafter made no attempt to conceal himself from the department of corrections and even called the department later that year to ascertain whether he was wanted by the state. He was told he was not. The state made no attempt to reassert its jurisdiction over him prior to May, 1972. During that long period he could have been taken into custody at any time.

In *Lanier*, the federal court reached the opinion that the state had waived its right to any further jurisdiction and custody over the petitioner in regard to the unfulfilled prison sentences and stated:

". . . Once the state, through acts or omissions of its officials, has led a person, through no fault of his own, to believe that he is free of a prison sentence, and makes no attempt for a prolonged period of years to reacquire custody over him, that person should be able to rely on the state's action or inaction and assume that further service of the sentence will not be exacted of him. The state should not later be heard to assert a right to custody over the person whom it has so misled, and to permit the state to do so offends the Due Process Clause of the Constitution. . . ." 361 F.Supp. at 947.

In the case at bar, the petitioner was misled by the agreement with the then District Attorney of the true disposition of his case. The lapse of five years is the same period in *Lanier*, where reassertion of jurisdiction was deemed to be unjust when sentence could have been completed but for the acts and omissions of the State. The petitioner in this case should have been afford-

ed the right to serve his sentence promptly. As in *Lanier*, the principles of due process should prevail to reach a just resolution.

In an Oklahoma case, *Ex parte Tucker*, 73 Okl.Cr. 424, 122 P.2d 174, 181 (1942), we articulated the proposition that officers should be alert to see that no unreasonable delay is had in the carrying out of the mandates and judgments of the courts in criminal cases. In that case this Court, in consideration of due process, stated a defendant has the right to commence within a reasonable time commitment of his sentence. In arriving at its decision to grant relief, this Court cited authority which held that if a court upon a criminal conviction "'[D]ischarge[s] the prisoner or permit[s] him to go indefinitely, their power and jurisdiction over him cease, and a subsequent sentence is without judicial authority.'"

*Ex parte Tucker*, supra, at 178, citing *People ex rel. Smith v. Allen*, 155 Ill. 61, 39 N.E. 568, 41 L.R.A. 473.

In *Tucker*, the Court's mandate of judgment and sentence came into the hands of a sheriff on March 27, 1929. The defendant at that time was out of state, but returned in June, 1929, and surrendered himself at the Sheriff's Office. He was not taken into custody there, but, instead, was allowed to return to his home. It was not until 1940 that the defendant was taken into custody to satisfy the judgment against him. In summarizing authorities, this Court stated that judgment and sentence should not be delayed for an unreasonable time before one is called upon to serve it.

Similarly, in an older Oklahoma case, *Ex parte Clendenning*, 22 Okl. 108, 1 Okl.Cr. 227, 97 P. 650 (1908), the Supreme Court held that where a petitioner had been convicted in a criminal case and not forthwith committed for incarceration and the trial court had issued an order discharging him from custody, it has no jurisdiction after the lapse of time of sentence and after the term to issue commitment on the judgment. This Court reached a result where fairness and justice required discharge of the petitioner; even though he had been found guilty by a court of competent jurisdiction,

where commitment had been improperly suspended and then was issued after the time of the sentence imposed had lapsed.

The case at bar is analogous, and the same application of the law should be followed. Here, the petitioner was convicted and sentenced, yet due to omission by the authorities, attempted commitment was not made until after five years. Had the trial court followed the mandate of this Court to enforce judgment, the three year sentence would have already been served. We do not relish discharging one duly convicted of a crime and who has not fulfilled the sentence imposed, but we must observe the requirements of due process and a defendant's right to commence his prison term within a reasonable time after judgment. The ends of justice would not be met by allowing commitment after such a lengthy delay.

▮ Our decision here should not be misconstrued as approval of all of the procedure utilized in this case: The judge before whom a motion for new trial is pending makes the decision on the question, not the prosecutor by "confessing" a motion for new trial; no authority is shown for what appears to be a grant of immunity by the prosecutor after conviction in exchange for testimony; failure to perfect an appeal within the time set out by law may result in a waiver of the right to appellate review; and one seeking relief on the basis of an alleged violation of the right to promptly begin service of the sentence must be able to show that reasonable and appropriate steps were timely taken to assert the right.

Writ of Prohibition GRANTED.